AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

```
LODGED
CLERK, U.S. DISTRICT COURT

11/7/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: EC DEPUTY
```

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>OSCAR ERNESTO ZAMORANO MORENO,<br><br>Defendant | Case No. 8:25-mj-00900-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 6, 2025 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111 (a) (1) | Assaulting, Resisting, or Impeding a Federal Officer Involving Physical Contact |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

**DENIED BY ORDER OF JOHN D. EARLY UNITED STATES MAGISTRATE JUDGE ON: 11/7/2025**

/s/ Payton Tidd
*Complainant's signature*

Payton Tidd, Special Agent, (HSI)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

*Judge's signature*

City and state: Santa Ana, California       Hon. John D. Early, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Payton Tidd, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and an arrest warrant against Oscar Ernesto ZAMORANO MORENO for a violation of 18 U.S.C. § 111(a)(1): Assaulting, Resisting, or Impeding a Federal Officer Involving Physical Contact.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), assigned to HSI Orange County, California. In 2023 and 2024, I attended the Criminal Investigators Training Program, and the Homeland Security Investigations Special Agent Training Program located

at the Federal Law Enforcement Training Center in Glynco, Georgia.

4. As part of my daily duties as an HSI Special Agent, my responsibilities include the investigation of criminal violations, to include violations related to assault on federal officers and/or agents, narcotics offenses, money laundering, fraud, child pornography, alien smuggling and human trafficking. During investigation of these matters, I have participated in the execution of search and arrest warrants.

### III. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. United States Border Patrol Conduct Immigration Enforcement Operation in Santa Ana**

6. On November 6, 2025, HSI was notified by United States Border Patrol ("USBP") regarding an incident involving Oscar Ernesto ZAMORANO MORENO ("ZAMORANO MORENO"), occurring in Santa Ana, California.

**B. Body Camera Footage Provided by United States Border Patrol**

7. I reviewed body camera footage involving the encounter between ZAMORANO MORENO and USBP Agents provided to me by USBP. According to the body camera footage from USBP Agent T.L., I learned the following:

a. On November 6, 2025, USBP Agent T.L. walked up to an individual, later identified as ZAMORANO MORENO. USBP Agent T.L. asked ZAMORANO where he was born and ZAMORANO MORENO stated

"I was born in another country but I became resident". Next, USBP Agent T.L. stated that he was with U.S. Border Patrol and that he needed to speak with ZAMORANO MORENO.

  b. After unsuccessful attempts to identify ZAMORANO MORENO's immigration status, USBP Agent T.L. told other USBP Agents to handcuff ZAMORANO MORENO. As USBP Agents attempted to, ZAMORANO MORENO began holding onto a chain link fence with both hands behind his back. USBP Agent T.L. told ZAMORANO MORENO to let go of the fence.

  c. After handcuffing ZAMORANO MORENO, USBP Agents walked ZAMORANO MORENO to their vehicle. With the door open, USBP Agent T.L. moved ZAMORANO MORENO into the entrance of the rear driver's side seat while telling him to get into the vehicle. While in the vehicle, ZAMORANO MORENO placed his left foot in the door hinge to prevent the door from shutting. For approximately thirty-four seconds, ZAMORANO MORENO resisted USBP Agent T.L.'s efforts to get him into the vehicle.

  d. Once ZAMORANO MORENO and the USBP Agents were in the vehicle, USBP Agent T.L. opened the door of the vehicle in an attempt to find an item he might have dropped. USBP Agent T.L. got out of the vehicle, located the item, and faced ZAMORANO MORENO who was sitting in the rear back seat. During this time, ZAMORANO MORENO lifted his left foot and kicked it out toward CBP Agent T.L. striking him in the chest near his body worn camera.

  e. Approximately sixty seconds later, USBP Agent T.L. had his right arm placed on ZAMORANO MORENO's upper torso

to restrain him. At this time, ZAMORANO MORENO proceeded to spit at USBP Agent T.L.

  f. After a few minutes, ZAMORANO MORENO picked up his left leg and applied force to USBP Agent T.L.'s leg. USBP Agent T.L. let out a painful cry, yelled "let go of my foot", and hit ZAMORANO MORENO in an effort to get ZAMORANO MORENO to release his foot. ZAMORANO MORENO let go of USBP Agent T.L.'s foot after approximately thirteen seconds.

  **C.** **Interview of United States Border Patrol Agent T.L.**

 8. On November 6, 2025, USBP Agent T.L. reported the following:

  a. USBP Agent T.L. stated that he was in "full uniform" which included his body armor, USBP badge, USBP placards, USBP hat, and a duty belt with a metal USBP badge.

  b. USBP Agent T.L. came in contact with an individual, who was later identified as ZAMORANO MORENO. ZAMORANO MORENO stated he was from another country but when asked he did not produce any documents concerning his immigration status.

  c. USBP Agent T.L. stated that after multiple opportunities given to ZAMORANO MORENO to produce immigration documents as well as a crowd beginning to gather, USBP Agent T.L. made the decision to move him from the scene.

  d. USBP Agents walked ZAMORANO MORENO to the vehicle. ZAMORANO MORENO resisted getting in the vehicle. USBP Agent T.L. stated that after he and ZAMORANO MORENO got into the vehicle, USBP Agent T.L. opened the door and got out of the

vehicle to retrieve an item he might have dropped. ZAMORANO MORENO began "kicking out toward the door", which was in the direction of USBP Agent T.L.

  e. USBP Agent T.L. stated that as ZAMORANO MORENO continued to resist in the vehicle, he leaned his body over ZAMORANO MORENO's body and ZAMORANO MORENO spit in USBP Agent T.L.'s face.

  f. USBP Agent T.L. stated that in another attempt to keep ZAMORANO MORENO from kicking out with his legs or getting out of his seat, he was using one of his legs to pin ZAMORANO MORENO's legs down. While pinning ZAMORANO MORENO's legs down, ZAMORANO MORENO "shot his leg out" and "caught" USBP Agent T.L.'s ankle with his foot and started putting immense pressure on it. USBP Agent T.L. stated that he felt like his ankle was "rolling" and being "stuffed under the passenger seat". USBP Agent T.L. stated that he told ZAMORANO MORENO to stop but ZAMORANO MORENO continued. USBP Agent T.L. stated he hit ZAMORANO MORENO in an effort to get ZAMORANO MORENO to release his foot.

  g. The crowd threw objects at the vehicle, resulting in damage to include broken windows.

  **D.  Interview of ZAMORANO MORENO**

9. I spoke with ZAMORANO MORENO on November 6, 2025, who told me the following:

  a. ZAMORANO MORENO stated that immigration officers approached him while he was walking down the street. They identified themselves as immigration officers. ZAMORANO MORENO

stated that he told them his social security number, he was a resident, and he was born in Mexico.

  b. ZAMORANO MORENO stated that while the immigration officers were escorting him to the vehicle, he held onto the fence behind him so that the immigration officers could not take him to the vehicle. ZAMORANO MORENO stated that the immigration officers could not put the hand cuffs on him because he was "moving."

  c. ZAMORANO MORENO stated that while the immigration officers were attempting to put him in the vehicle, the officers could not close the door because ZAMORANO MORENO was "stretching".

  d. ZAMORANO MORENO stated at one point, he had stepped on one of the immigration officers' ankles with his left foot and the agent hit him three times.

 10. After conducting law enforcement records checks on ZAMORANO MORENO's immigration status, it shows that ZAMORANO MORENO submitted an application to register permanent residence or adjust status in March 2009, which was accepted. His status expired in March 2019 and records showed that ZAMORANO MORENO never renewed. Additionally, a naturalization application submitted by ZAMORANO MORENO was denied on June 24, 2017.
///

## IV. CONCLUSION

11. For all of the reasons described above, there is probable cause to believe that ZAMORANO MORENO committed a violation of 18 U.S.C. § 111(a)(1): Assaulting, Resisting, or Impeding a Federal Officer Involving Physical Contact.

/s/
PAYTON TIDD, Special Agent
Homeland Security
Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ____ day of November, 2025.



DENIED
BY ORDER OF
JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE
ON: 11/7/2025

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE